UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA CRAWFORD,

        Plaintiff,

v.

DAVID'S BRIDAL, INC., f/k/a
PHILLIE BRIDALS, INC.,

        Defendant.
_____/

CASE NO. 07-13830

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

        Before the Court is Defendant David's Bridal, Inc.'s Motion for Summary Judgment (Doc. No. 17).  Plaintiff Cynthia Crawford filed a complaint against her former employer, David's Bridal, Inc. (David's Bridal), alleging that she was terminated because of her race in violation of state and federal law.  The Court heard oral argument on October 1, 2008, and at the conclusion of the hearing, agreed to allow the submission of additional materials.  The Court has reviewed the additional material.  For the reasons that follow, Defendant's motion is **GRANTED**.

**I.    STATEMENT OF FACTS**

        Plaintiff, an African American, was hired as a wedding consultant in Defendant's Dearborn store in June 2003.  She later transferred to a store located in Westland.

        In early 2006, Rebecca Reiter became the Acting Store Manger in Westland.  Reiter reported to District Manager Norma Ersin, who made the recommendation to terminate Plaintiff.

The incident that precipitated Plaintiff's termination occurred on February 25, 2006. Tracy Leeman, the Assistant Store Manager, asked Crawford to straighten runs, which involved going through the racks of bridal gowns, making sure they were inside protective bridal bags, that the bags were lined up, and that the dresses were straight.

In response Plaintiff, who felt sick and wanted to leave, approached Leeman, to request permission. There is no dispute that Crawford did not straighten the runs and instead left the store before her shift ended. It also is undisputed that no manager authorized Crawford's early departure.

Marisol Ortiz, the Third Key, an employee that could lock up and cover as manager in the store, reported that when Plaintiff walked off the job, she stated she was not straightening the "fucking runs." Ortiz Dep. at 19-20, 27-28. Leeman and Ortiz reported the incident to Reiter, and Reiter contacted Ersin about the incident. Reiter Dep. 58-9. After Ersin discussed the incident, she contacted human resources with her recommendation that Plaintiff be terminated. Ersin Dep. at 122.

When Plaintiff returned to work on February 28, 2008, she learned of her termination. Reiter, Leeman, and Ortiz were present at the meeting. At that time, Crawford received a Performance Notice that articulated the basis of her termination. Pl.'s Ex. 15. It describes the violation as follows:

> On 2/25/06 Tracy [Leeman] asked you to straighten your bridal runs before you left and to finish your scheduled shift which was until 7:00 p.m. At that time you proceeded to get your belongings and clocked out @ 6:37 and did not ask either member of mgt that were here if it was okay to leave. Then at that time you proceeded to the front of the store to where Mari [Ortiz] was and told her that "you were not going to straighten your fucking runs" and left the store.

Id.

2

Crawford later contacted Defendant's Director of Compensation & Labor Relations, Michele Pieroni.  Plaintiff told Pieroni she left because she was ill, did not use profanity and that she wanted to continue her employment with David's Bridal.  After Plaintiff indicated that she and Ersin had a good relationship, she was advised to speak to Ersin about the separation.  Ersin did not retract the termination.  Pl.'s Dep. at 166-567, 181, 195.

Plaintiff subsequently filed a complaint alleging that she was terminated because of her race.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Summary judgment is properly granted if the non-moving party fails to establish one of a claim's required elements.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Further, the "party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact.  Cloverleaf Car Co. v. Phillips Petroleum Co., 540 N.W.2d. 297, 301 (1995).  The Court must view the evidence in a light most favorable to, and make all reasonable inferences in favor of, the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999).

## III.     ANALYSIS

Plaintiff asserts that Defendant terminated her because of her race in violation of federal and state law.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1),

3

prohibits an employer from discriminating against an employee because of the employee's race.  The Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2302(a), reads in pertinent part as follows:

> Except where permitted by law, a person shall not:
>
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, <u>race</u>, color, national origin, age, sex or marital status.

(Emphasis added).  The Act "is aimed at the prejudices and biases borne against persons because of their membership in a certain class, and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases."  <u>Radtke v. Everett</u>, 501 N.W.2d 155 (Mich. 1993) (citation omitted).

Here, Plaintiff has no direct evidence of racial discrimination.  The lack of direct evidence is not dispositive because in the absence of direct evidence of discrimination, the Court's analysis in determining the merit of Plaintiff's claims under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Title VII, and 42 U.S.C. § 1981 is the burden-shifting framework articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647, 658 (6th Cir. 1999) (nothing that "claims of alleged race discrimination brought under § 1981 and the Elliot-Larsen Act under the same standards as claims of race discrimination brought under Title VII.").  Therefore, the analysis for Plaintiff's federal discrimination claims likewise applies to Plaintiff's state law

4

claim.[1]

Under McDonnell Douglas v. Green, 411 U.S. 792 (1973), to establish a prima facie case that a defendant violated Title VII in a termination claim, the plaintiff must show that she was a member of the protected class, she was qualified for her position, that she suffered an adverse employment action, and that she was treated differently than similarly-situated, nonprotected employees. Laderach v. U-Haul of Northwestern Ohio, 207 F.3d 825, 828 (6th Cir. 2000); Brown v. State of Tennessee, 693 F.2d 600, 603 (6th Cir. 1982) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  If the plaintiff makes a prima facie case, the defendant bears the burden to articulate a legitimate nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. Should the defendant meet its burden, the plaintiff must demonstrate that the reason offered by the defendant is pretextual. Id.

---

[1] Crawford argued in her response that a new standard governed the analysis of her claim based upon the decision in White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008). White addressed the proper framework to apply in analyzing a Title VII mixed motive claim. Although Crawford suggested at oral argument that she advanced a mixed-motive discrimination claim under 42 U.S.C. § 2000e-2(m), the Complaint as well as her responsive pleadings do not support this contention. In her complaint, Plaintiff alleges that she was treated differently than her white comparables. See Compl. ¶ 14. She adds that Defendant discriminated against her in the terms and conditions of her employment, including, but not limited to, harassment through disciplinary notices, discipline, and ultimately, termination. Her claims were pleaded as a single-motive discrimination claim. Her inclusion of the analysis advanced in determining a mixed motive claim is inapplicable to a claim she did not plead.

### A. Prima Facie case

The first three elements necessary to establish a claim are not in dispute. Therefore, the Court limits its discussion to the fourth element: Whether another employee with similar qualifications who was not a member of the protected class was treated more favorable. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992). This prong requires that a plaintiff establish that she was similarly situated in "all of the relevant aspects." Pierce v. Commonwealth Life Ins., 40 F.3d 796, 802 (6th Cir. 1994). Factors to consider in assessing the similarities include whether the two shared the same supervisor, had the same position, engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Mitchell, 964 F.2d at 583; Lytle v. Malady, 579 N.W.2d 906, 917 (Mich. 1998).

Plaintiff asserts that other employees used profanity routinely, and behaved insubordinately, but were not disciplined. Plaintiff's assertion, even viewed in the light most favorable to Crawford, is not enough. Plaintiff's burden is satisfied by showing that another employee's conduct was of comparable seriousness to her own, yet punished less severely. Here, Crawford has no evidence showing that any employee who disobeyed a manager's directive, used profanity, and walked off the job before the end of her shift was retained by Defendant. She points to other employees who used profanity or failed to straighten runs. Her comparison is wholly inadequate because she is unable to identify another employee who left the store without permission from management before her shift was completed. In sum, Crawford cannot satisfy the fourth prong because she has not shown that she was treated differently than similarly-situated individuals outside of her

protected class.

### B. Defendant's reason for termination

Even if Plaintiff were able to establish all of the elements necessary to maintain a prima facie case, Defendant's proffered reason for her termination satisfies its burden under McDonnell Douglas.

### C. Pretext

Finally, Crawford cannot meet her burden to show that the reason she was terminated was pretextual. This burden is satisfied when a plaintiff can show by a preponderance of the evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock, 29 F.3d 1078, 1084 (6th Cir. 1994) (citing McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir. 1993). In sum, the plaintiff must then present evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." Lytle v. Malady, 579 N.W.2d 906, 916 (Mich. 1998). Michigan courts have held that a plaintiff must offer evidence, beyond her own assertion of discrimination, supporting her claim that the employer's proffered reason is a pretext. A plaintiff's claim that he was "a victim of . . . discrimination is not enough, in itself, to take the case to jury." Bouwman v. Chrysler Corp., 319 N.W.2d 621, 626 (Mich. 1982).

To show pretext, Plaintiff offers her own testimony as well as others, the lack of performance notices given to other employees, and her dispute of the factual basis given for her termination. The Court looks first at Plaintiff's testimony.

7

### 1. Plaintiff's belief

According to Plaintiff, during her sixteen-month relationship with Ersin, Ersin targeted Plaintiff because of her race.

> Well, when you look at me, you can't help but see race. When you look at me, if you talk to me, you can't help but see my race which is African American. So I felt like Norma did not like me because of my race. I did not give her any other reason to not like me. As far as like, you know, at one point in time I through it was dress code. I went to work every day in dress code, blazer, shirt, skirt, pants, whatever, so that wasn't it. I honestly went through what is it about Norma. It was my race. That's the only logical explanation to her behavior towards me. . . .

Pl.'s Dep. at 142.

This testimony reflects Plaintiff's subjective belief that race was the motivating factor. Her deposition testimony is contradicted by her earlier statement to Pieroni that Ersin and Plaintiff had a good relationship. Moreover, the law requires more than a plaintiff's own assertion of discrimination. In this circuit, no issue of fact is created by this kind of subjective belief. LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1090-91 (6th Cir. 1984).

### 2. Testimony of co-workers

Plaintiff also relies on the opinions of other employees who shared Plaintiff's belief that Ersin's treatment was racially motivated. For example, Mary Scott, a former store manager who had supervised Plaintiff, testified that Ersin ordered Scott to discipline Plaintiff for failing to sell a certain percentage of veils, bridesmaid dresses, shoes, and slips, despite that fact that Plaintiff was the top seller. Scott testified that she did not agree with the discipline, not that nonprotected employees were treated differently. Consequently, the evidence shows that Scott and Ersin disagreed on the quality of

Plaintiff's job performance.  Scott's subjective belief is in essence a mere disagreement with the corporation's business judgment and does not create an issue of fact.  McDonald v. Union Camp Corp., 898 F.2d 1155, 1160-62 (6th Cir. 1990).  It creates no inference of racial animus.  Her belief is further undermined by testimony that Ersin consistently raised concerns about the Westland store's sales numbers and conversion rates.

Not one of Plaintiff's co-workers has testified that she heard Ersin making discriminatory comments about African Americans, although several suspected Ersin harbored prejudices against African Americans.  In addition to the speculation of others, Plaintiff relies on the affidavit of Cindy Louis-Smith, an African American, and former David's Bridal employee, to show pretext.  After David's Bridal fired Louis-Smith, Ersin hired her to work as store manager at another store specializing in women's clothing. Pl. Ex. 12.  Louis-Smith speculates that her hiring was "tokenism."  Id.  According to Louie-Smith, Ersin told her to schedule a "good mix" of employees, which Louis-Smith interpreted as either a majority of white sales staff or all white sales people on a shift.  Ersin told Louis-Smith that it would be intimidating to have white customers confronted by a majority black sales force, just as it would be intimidating for Louis-Smith to be at a meeting with all white people.  Id.

Ersin's comments, made to an African American manager she hired after the alleged discriminatory conduct at issue here, create no inference that Crawford's termination was pretextual.  Plaintiff's evidence that she was helpful and a good employee according to her former store manager, see Scott Dep 32, and a comanager, see Grigorian Aff., is insufficient to challenge Ersin's basis for discharging Crawford.  The testimonials of co-workers does not bolster Plaintiff's claim.  Hawkins v. PepsiCo, Inc., 203 F.3d 274,

280 (4th Cir. 2000).

### 3. Hiring and Discipline

Next, Plaintiff relies on evidence regarding hiring and discipline to raise an issue of fact regarding pretext. Plaintiff claims her burden is met because no black store managers worked under Ersin during her eight years as district store manager. Although statistical evidence of disparate treatment or impact in employment decisions can support an inference of discrimination, Plaintiff has failed to provide sufficient information to render this fact useful. There is no evidence given regarding the race of the applicants. See Smith v. Leggett Wire Co., 220 F.3d 752, 761-62 (6th Cir. 2000). Further, it is undisputed that Ersin hired black assistant store managers: she promoted one to training manager, and subsequently hired another to run an unrelated business enterprise.

Plaintiff also argues that her receipt of performance notices when Defendant produced none for other employees suggests discrimination. See Pl.'s Exs. 10 and 24. Plaintiff has provided three verbal performance notices addressing her conversion numbers; one written notice addressing headpiece conversion, and a written notice dated February 6, 2006, that requests among other things, immediate improvement of job attitude and conversion rates. Only two performance notices were produced from the other personnel files.

Plaintiff maintains that the disparity suggests she was targeted because of her race because many store employees were not meeting company standards for conversion rates. Although Reiter testified that she had disciplined other employees for conversion rates, those notices were not provided to Plaintiff in discovery. Plaintiff concludes that the decision in Madden v. Chattanooga City Wide Serv. Dep't, 549 F.3d 666 (6th Cir. 2008),

supports her position that she was treated differently based upon her race. The Court disagrees.

In Madden, the appellate court found that where workers routinely set off firecrackers and had not been punished, the decision to terminate the plaintiff for engaging in the same conduct created an inference of pretext. Those facts are distinguishable. Even if the Court credits Plaintiff's assertion that David's Bridal did not issue performance notices to other employees who failed to reach store conversion rates, the Court is unable to draw an inference favorable to Plaintiff, because this circumstantial evidence must be viewed in a factual context. Here, one notice itself provides a reason Plaintiff's sales were at issue: Plaintiff was a "seasoned consultant," who should be "setting the standards for [the] new girls." Pl.'s Ex. 9, February 6, 2006, Performance Notice. Second, the November 25, 2005, Performance Notice advises Plaintiff to "walk customers to the [headpiece] area and show them the headpieces. Id. To create a favorable inference Plaintiff would have to show not only that other employees failed to reach conversion rates, but that the employees were not bothering to show headpieces or other accessories to brides. Finally, Crawford was not terminated for failing to reach the store conversion rates. Nor did the performance notices attach any materially adverse disciplinary consequence to the conversion rate failures. Nevertheless, at oral argument, Crawford argued that the conversion rates are relevant in light of Defendant's Response to Plaintiff's First Set of Interrogatories. Specifically, Defendant was asked to identify all facts that caused the termination. See Doc. No. 26. The response reads:

> After multiple warnings regarding her job performance and behavior, Plaintiff's employment culminated with an incident on February 26, 2006, wherein Plaintiff was scheduled to work

11

> until 7:00 p.m. On that day, Assistant Store Manager Tracy Leeman observed Plaintiff preparing to leave prior to 7:00 p.m. Leeman asked Plaintiff to straighten her bridal runs before she left (which would take her to her 7:00 p.m. quitting time). Instead of following Leeman's instructions, Plaintiff proceeded to the front of the store to leave. As she was leaving, Plaintiff commented to another employee that she was "not going to straighten [ ] f_ ing runs."

Id. Plaintiff builds her argument on the opening phrase in the response, "After multiple warnings regrading her job performance." Id. Plaintiff's interpretation requires the Court to ignore all the undisputed deposition testimony attributing the February 25, 2007, incident as the sole basis for Crawford's termination. No employee involved in the decisionmaking process pointed to Plaintiff's prior warnings regarding her job performance as a platform from which the decision was launched. To the contrary, Plaintiff's failure to meet conversion rates did not result in any adverse consequence. She was neither suspended nor terminated, merely instructed to bring up her conversion percentages. Pl.'s Ex. 9. The introductory phrase merely sets the stage for the incident that led to Plaintiff's termination; it creates no consistency in the record; it fails to show mendacity on Defendant's part.

### 4. Adequacy of the investigation

To avoid a finding that its claimed nondiscriminatory reason was pretextual, David's Bridal must establish its reasonable reliance on the particularized facts that were before Ersin at the time the decision was made. The Court finds it has.

Here, Ersin, who believed Plaintiff had a bad attitude toward management, was presented with evidence to support her belief. Reiter, who was Plaintiff's manager for less than a month before the incident, had six conversations with Ersin about removing Plaintiff from the store because of Plaintiff's attitude toward management. Pl.'s Ex. 8, Reiter Dep.

12

at 23-5, 58-9.  Ersin also had a discussion with Crawford about the need to get behind management.  There was no reason for Ersin to disbelieve what she was told by Reiter about Crawford's conduct.  See Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001) (citation omitted) (noting that an honest but incorrect belief is a sufficient basis for discharging an employee).  The incident as reported was consistent with Ersin's belief about Crawford's conduct toward new management.

Crawford challenges the adequacy of the investigation and concludes it calls into question whether Defendant's belief was honestly held.  She directs the Court to the decision in Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405 (6th Cir. 2008), which was decided after oral argument.  The appellate court reiterated long standing in Martin, that the process need not be perfect just "reasonably informed." Id. at 414.  Her contention is that David's Bridal had no reason to believe the events occurred as reported because Ortiz had a reputation as a liar.  According to Plaintiff, she did not use profanity.

The Martin decision does not salvage Plaintiff's claim.  The investigation in that case was called into question because a witness to a critical event was never asked what happened.  Here, Ersin did have statements from the employees that had information about the incident.  She talked to Leeman about the incident and the store manager.  Ersin made her decision to terminate Crawford based on the information provided by its store managers.  Plaintiff's argument might hold merit had Ortiz been the only employee that provided information about the incident or if her profanity was the basis of her termination.  Although Crawford claims that Defendant's assessment of her is wrong, contests whether she used the language attributed to her, and provides an explanation for leaving the store without finishing her shift, it is not the Court's province on summary judgment to decide

whether the Defendant's assessment was accurate, only whether it really was the reason Plaintiff was terminated.  See Hawkins v. Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (citing DeJarnette v. Corning Inc., 133 F.3d 292, 299 (4th Cir. 1998) (assessing a pregnancy discrimination claim).  Crawford's claim of discrimination does not open the door to substitute her judgment or that of this Court's for Defendant's.  DeJarnette at 298-99.  In short, Crawford has failed to show that the Defendant's stated reason for terminating her was not the real reason.

## IV. CONCLUSION

Plaintiff failed to raise a genuine issue of material fact relative to the elements necessary to maintain a cause of action for discrimination under Title VII, § 1981, or the ELCRA.  Accordingly, the Court **GRANTS** Defendant's motion.

**IT IS SO ORDERED.**

                                          s/Marianne O. Battani
                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

Date:  February 6, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                          s/Bernadette M. Thebolt
                                          Deputy Clerk